

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

January 21, 2021

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *The New York Times Company v. HHS*, No. 20 Civ. 3063 (GWG)

Dear Judge Gorenstein:

      This Office represents the U.S. Department of Health and Human Services ("HHS") in the above-referenced matter. I write respectfully to request a stay of the Court's Order dated January 13, 2021, Dkt. No. 31 (the "January 13 Order"). In particular, HHS respectfully requests a stay of the January 13 Order for sixty days, or until March 15, 2021, to permit the Acting Solicitor General of the United States to consider whether to authorize appeal of the Order. The Government further requests that if a notice of appeal is filed on or before March 15, the stay continue until the final disposition of the Government's appeal.

      Plaintiff commenced this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking "any reports produced by Integritas Creative Solutions LLC investigators regarding Stanley Patrick Weber [the Integritas Report]." Compl. ¶ 8. In the January 13 Order, the Court denied the Government's motion for summary judgment, granted Plaintiff's cross-motion for summary judgment, and directed the Government to produce the Integritas Report within 14 days, *i.e.* by January 27, 2021, with the exception of any information redacted pursuant to Exemption 6. *See* Dkt. No. 31 at 24-25.

      Under 28 U.S.C. § 2107(b) and Federal Rule of Appellate Procedure 4(a)(1)(B), the Government has sixty days after entry of judgment to file a notice of appeal. Only the Solicitor General can authorize an appeal by the Government. *See* 28 C.F.R. § 0.20(b). The Government's process for consideration of appeal involves consultation with affected agency and other governmental components.

      Courts consider four factors when determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted).

In this case, the second factor—whether the Government will be irreparably injured absent a stay—is crucial. "[O]nce there is disclosure" of information withheld under FOIA, "the information belongs to the general public," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), and any protections the Government has are irretrievably lost and its appeal is moot. "Disclosure followed by appeal after final judgment is obviously not adequate in such cases—the cat is out of the bag." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998). Thus, in FOIA cases, courts routinely grant stays of disclosure, for "denial of a stay will utterly destroy the status quo . . . but the granting of a stay will cause relatively slight harm to appellee." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *accord People for Am. Way Found. v. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) ("[p]articularly in the FOIA context, courts have routinely issued stays where the release of documents would moot a defendant's right to appeal"); *see HHS v. Alley*, 129 S. Ct. 1667 (2009) (Thomas, J., in chambers) (staying FOIA disclosure pending disposition of appeal); *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers) (denial of stay of FOIA order would cause mootness and thus irreparable injury); *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 355 n.3 (2d Cir. 2005) (noting court granted a stay of FOIA disclosure order); *Ferguson v. FBI*, 957 F.2d 1059, 1062 (2d Cir. 1992) (same).

Release of the records subject to the January 13 Order would destroy the status quo and eliminate the Government's ability to seek appellate review. That in itself is ample reason to grant a stay. Moreover, with respect to the third factor, Plaintiffs would suffer little, if any, harm if the Court enters a stay. And, as to the fourth factor, even assuming a public interest in the release of the Integritas Report, a delay would not appreciably harm the public's interest.

Where, as here, the balance of equities strongly favors a stay, the Government satisfies the first stay factor by demonstrating that it has a reasonable basis for appeal. *See Providence Journal*, 595 F.2d at 890 (noting "appellants need not show an absolute probability of success in order to be entitled to a stay" of FOIA disclosure order, and granting stay where the Government demonstrated that its appeal had "potential merit" and "serious legal questions" were presented); *see also Mohammed v. Reno*, 309 F.3d 95, 100-01 (2d Cir. 2002) (noting "various formulations used to describe the *degree* of likelihood of success that must be shown" to warrant a stay, and concluding that "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay" (citations and quotation marks omitted)).

The Government meets that standard here. First, in ordering disclosure of the report at issue, and rejecting the Government's argument that the report falls within Exemption 3, the Government submits that Court applied an overly narrow reading of the underlying statute, 25 U.S.C. § 1675. Read in its entirety, it is clear that § 1675 is a withholding statute within the meaning of Exemption 3, 5 U.S.C. § 552(b)(3)(A)(i), and the Integritas Report satisfies the criteria of this statute.

Although the Court concluded that HHS did not meet its burden of demonstrating that the Report is the record of an activity "to assess the quality of medical care" under 25 U.S.C. § 1675(a)(2), the text of the statute demonstrates that this reading of § 1675 is too narrow. In particular, the statute provides that "*any* activity . . . to assess the quality of medical care" is

covered in the definition of a medical quality assurance program. *Id.* (emphasis added). The use of the word "any," coupled with the expansive list of the committees or review bodies who might undertake such an assessment—including "review bodies responsible for quality assurance, credentials, infection control, *patient safety*, patient care assessment (including treatment procedures, blood, drugs, and therapeutics), medical records, health resources management review, and identification and prevention of medical or dental incidents and risks," 25 U.S.C. § 1675(a)(2) (emphasis added)—necessitates a broader interpretation of the term medical care. *See, e.g.*, *New York v. EPA*, 443 F.3d 880, 885 (D.C. Cir. 2006) ("[T]he Supreme Court has drawn upon the word 'any' to give the word it modifies an 'expansive meaning' when there is 'reason to contravene the clause's obvious meaning.'") (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31-32 (2004)).

As the Court acknowledges, "[c]ertainly, not being sexually abused by a doctor could only result in a patient obtaining better medical care and would cause the patient to be more safe than would be the case otherwise[.]" Dkt. No. at 31 at 11 (internal quotation marks omitted). Here, the Integritas Report was commissioned by IHS to assess various issues related to the quality of medical care being provided to IHS patients—including a critical component of medical care, namely patient safety—and there is at least a fair prospect that the Second Circuit would conclude that the Integritas Report fell within the scope of § 1675 and accordingly was properly withheld under Exemption 3.

Second, in rejecting the Government's argument that the Integritas Report was properly withheld under Exemption 5, the Court concluded that "HHS has not met its burden under the FOIA Improvement Act of 2016 to show that it 'reasonably foresees that disclosure would harm an interest protected by' the deliberative process privilege." Dkt. No. 31 at 23 (quoting 5 U.S.C. § 552(a)(8)(A)(i)). However, it is undisputed that the report in question reflects an agency "'engaged in a continuing process of examining their policies,' which requires 'generat[ing] memoranda containing recommendations which do not ripen into agency decisions,'" *Color of Change v. United States Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 454 (S.D.N.Y. 2018) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151 n.18), and this process is at the heart of the deliberative process privilege. Contrary to the Court's conclusions here, the Government believes that the harm caused by disclosure is apparent, namely that the "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)); *see also Color of Change*, 325 F. Supp. 3d at 454 (disclosure "poses the very risk that the deliberative process privilege is meant to protect against—public confusion over agency official policy, which may chill frank and candid discussion among Government employees."); *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (recognizing "the tendency of the public to assume that a memorandum generated within an agency . . . reflects the position of the agency").

For these and other reasons set forth in the Government's briefs, the Government submits that it would have a reasonable chance of success in appealing the January 13 Order. That is more than sufficient to warrant a stay where, as here, compliance with the Order would moot any appeal by the Government, and the balance of equities weighs in favor of a stay. *Mohammed*, 309 F.3d at 100-01; *Providence Journal*, 595 F.2d at 890.

The Government has sought consent from Plaintiff's counsel to the requests outlined above, but Plaintiff's counsel has advised this Office that "given the circumstances, they do not consent to the Government's requests."

I thank the Court for its consideration of this request.

                Respectfully,

                AUDREY STRAUSS
                United States Attorney
                Southern District of New York

By:   _____
                Jennifer C. Simon
                Assistant United States Attorney
                86 Chambers Street, Third Floor
                New York, New York 10007
                Tel.: (212) 637-2746